IN THE UNITED STATES COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES (AFSCME), AFL-CIO 1625 l Street N.W., Washington, D.C. 20036 | Case No.  1:18-cv-1444 |
| and | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| AMERICAN FEDERATION OF TEACHERS, AFL-CIO 555 New Jersey Ave. N.W., Washington, D.C. 20001 | |
| Plaintiffs | |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States 1600 Pennsylvania Avenue, N.W., Washington, D.C. 20035, | |
| and | |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT 1900 E Street, N.W., Washington, D.C. 20415, | |
| and | |
| JEFF T.H. PON, in his official capacity as Director of the U.S. Office of Personnel Management, 1900 E Street, N.W., Washington, D.C. 20415, | |
| Defendants. | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.      This action seeks declaratory and injunctive relief with respect to three Executive Orders issued by President Donald J. Trump on May 25, 2018: (A) Executive Order No. 13,837, titled "Executive Order Ensuring Transparency, Accountability, and Efficiency in Taxpayer Funded Union Time Use" (hereafter, the "Official Time EO"); (B) Executive Order No. 13,836, titled "Developing Efficient, Effective, and Cost-Reducing Approaches to Federal Sector Collective Bargaining." (hereafter, the "Bargaining Process EO"); and (C) Executive Order No. 13,839, titled "Promoting Accountability and Streamlining Removal Procedures Consistent with Merit System Principles" (hereafter, the "Removal EO") (together, the "Executive Orders")

2.      Plaintiff American Federation of State, County and Municipal Employees, AFL-CIO (hereafter "AFSCME") and Plaintiff American Federation of Teachers, AFL-CIO ("AFT") are each a labor union whose affiliates have been certified as the exclusive collective bargaining representatives of various employees employed by federal agencies.

3.      AFSCME and AFT challenge the Executive Orders on the basis that, individually and collectively, the Executive Orders constitute an unconstitutional exercise of executive authority that is inconsistent with and contrary to the reticulated rules and requirements Congress has mandated with respect to the process and substance of collective bargaining between executive agency employers and their employees' certified exclusive bargaining representative under the Civil Service Reform Act of 1978 (hereafter, "CSRA") and the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101, *et seq*. (hereafter, "FSLMRS").

4.      As detailed herein, the Executive Orders violate the Separation of Powers under the Constitution and exceed the authority of the President in matters legislated by Congress; constitute a violation of the Take Care Clause contained in article II, section 3 of the Constitution of the United States ("Take Care Clause"); and violate the speech and associational rights of

AFSCME and AFT and their respective members in contravention to the First Amendment of the United States Constitution.

## JURISDICTION

5.      Jurisdiction over this action is conferred upon the United States District Court by 28 U.S.C. §§ 1331 and 1343.

6.      AFSCME and AFT seek a declaratory judgment pursuant to 28 U.S.C. § 2201.

## VENUE

7.      The District of Columbia is a proper venue for this action under 28 U.S.C. § 1391(e) because plaintiffs AFSCME and AFT are headquartered here, and because Defendants' principal offices are located here.

## PARTIES

*The Plaintiffs*

8.      AFSCME is a national labor organization and unincorporated association having its headquarters at 1625 L Street NW, Washington, D.C. 20036.  AFSCME represents federal civilian employees in agencies and departments across the federal government.

9.      AFSCME affiliates are the certified exclusive representative, under 5 U.S.C. § 7111, of employees they represent.

10.     AFSCME is a party to collective bargaining agreements negotiated pursuant to the FSLMRS.

11.     AFT is a national labor organization and unincorporated association having its headquarters at 555 New Jersey Ave. N.W., Washington, D.C. 20001.

12.     AFT represents approximately 8,000 federal civilian employees in agencies and departments in the federal government.

3

13.     AFT's affiliated locals, including the Overseas Federation of Teachers and the Federation of Indian Service Employees, are the certified exclusive representative, under 5 U.S.C. § 7111, of employees they represent.

14.     AFT's affiliated locals are parties to collective bargaining agreements negotiated pursuant to the FSLMRS.

*The Defendants*

15.     Defendant Donald J. Trump is the President of the United States.  He is sued solely in his official capacity.  In that capacity, he issued the Executive Orders challenged in this suit.

16.     Defendant U.S. Office of Personnel Management ("OPM") is a federal agency, headquartered in Washington, D.C., charged with implementing the Executive Orders.

17.     Defendant Jeff T.H. Pon is the Director of OPM ("Director"), located in Washington, D.C.   He is sued solely in his official capacity.

## ALLEGATIONS

*Congress' Mandated System of Federal Employee Collective Bargaining*

18.     Federal employees have formed unions and collectively bargained since the time of the founders.  But prior to the passage of the Civil Service Reform Act of 1978 ("CSRA"), federal merit systems and labor relations were anarchic and *ad hoc*.  Through passage of the CSRA, Congress comprehensively and systematically re-wrote the rules of federal merit system and collective bargaining.

19.     Included in the CSRA is the Federal Service Labor-Management Relations Statute, a comprehensive statute in which Congress prescribed in detail the process by which

federal employees exercise their right to organize and bargain collectively through unions of their own choosing.  5 U.S.C. § 7101(a)(1).

20.     Where federal employees exercise their right to negotiate collectively through a union, their federal employer is obligated to approach negotiations in good faith and to approach negotiations with a sincere resolve to reach agreement.  5 U.S.C. § 7114(b).

21.     This obligation includes the process of collective bargaining, and section 7103(a)(12) defines "collective bargaining" as the performance of the mutual obligation of the representative of an agency and the exclusive representative of employees in an appropriate unit to meet at reasonable times and to consult and bargain in a good-faith effort to reach agreement on terms and conditions of employment

22.     One of the mandatory subjects of collective bargaining to which the duty of good faith applies are federal employees' conditions of employment, broadly defined.  5 U.S.C. §§ 7103(a)(9) & 7103(14).

23.     Further, FSLMRS requires federal employers and their employees' unions to agree to and include in "any collective bargaining agreement" a procedure for the resolution of disputes or grievances.  5 USC § 7121.   Only five categories of grievances are excluded from this requirement.  5 U.S.C. § 7121(c).

24.     Also included within Congress' mandates is a duty on the part of employees' unions to represent all persons comprising the collective bargaining unit in negotiations and grievances, whether or not such persons are members of the union or contribute to the cost of the union's representation.  5 U.S.C. § 7114(a)(1).

25.     Recognizing this solemn obligation, Congress provided for the use of "official time" by employees who shoulder this obligation, and further imposed on employers a duty to

negotiate in good faith over the use of official time in connection with any matter covered by the FSLMRS.  5 U.S.C. § 7131.  The FSLMRS provides that employees acting on behalf of an exclusive representative shall be authorized official time to negotiate a collective bargaining agreement. *Id*. It also provides that employers shall determine, except as provided in § 7131(a), whether employees are entitled to official time in any phase of proceedings before the Federal Labor Relations Authority.

26.     Thus, 5 U.S.C. § 7131(d) provides that "any employee representing an exclusive representative," or "in connection with any other matter covered by this chapter, any employee in an appropriate unit represented by an exclusive representative, shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest."

27.     In addition, the Civil Service Reform Act of 1978 prescribes a process and means for assessing employee performance and the taking of personnel actions in response to such assessments.  Most relevant here, Congress provided that, where an employee's performance is found lacking, prior to taking action federal employers must provide an opportunity to demonstrate "acceptable performance."  5 U.S.C. § 4302(c)(6).

28.     Across the federal sector, the result of the CSRA's "acceptable performance" mandate has been to accord employees a "performance improvement period" ("PIP") to provide an opportunity to correct and demonstrate improvement following a negative assessment. Congress chose not to define the precise length of a PIP by statute, or to include PIPs in the list of management rights reserved to agencies by 5 U.S.C. § 7106.

29.     Consequently, under the FSLMRS, an agency's policy with regard to PIPs must be negotiated with its employees' unions, because it is a "condition of employment" as defined by 5 U.S.C. § 7103(14).  This has indeed been the practice followed since 1978, until now.

*Limits on Executive Authority Exist*

30.     The President of the United States has authority to issue executive orders if authorized by an act of Congress or when provided by the Constitution of the United States.

31.     Unauthorized executive orders, including those that seek to supersede, circumvent, conflict with, or contradict a federal statute, are unconstitutional.

32.     With respect to Official Time, PIPs, and the process of collective bargaining, Congress has not conferred authority on the President to set federal labor relations policy, fix bargaining positions, or issue labor relations mandates by Executive Order.  Rather, Congress has fixed such policy through the FSLMRS, and therein has mandated that agencies are to negotiate in good faith with their employees' unions when the employees have exercised their right to be so represented.

33.      With respect to the FSLMRS, Congress has authorized the President to issue executive orders in only two circumstances: (1) to exempt agencies that have a primary function related to intelligence, counterintelligence, investigative or national security work, or (2) with respect to personnel employed outside of the United States and District of Columbia when necessary for national security.  5 U.S.C. § 7103(b).  None of the Executive Orders fall within these narrow exceptions.

34.     No other subject areas for the issuance of executive orders by the President of the United States have been authorized by Congress with respect to federal employee labor relations, nor are they conferred by the Constitution of the United States.

*The President's May 25, 2018 Executive Orders*

35.     On May 25, 2018, Defendant Trump, acting in his official capacity as the President of the United States, issued three executive orders that relate to the process and substance of federal employee collective bargaining governed by the CSRA and FSLMRS.

36.     Defendant Trump purported to issue the Executive Orders pursuant to authority conferred by Congress, specifically 5 U.S.C. § 7301 which provides: "The President may prescribe regulations for the conduct of employees in the Executive Branch."

37.     Section 7301 does not extend to the regulation of federal labor relations, the collective bargaining process or the subject matters over which the Executive Orders seek to assert control, *i.e.* union activity and employees' rights to engage in such activity, and employer responses and obligations with respect to employees and their unions.

38.     The Executive Orders, individually and acting together, seek to supersede and circumvent federal agency collective bargaining as required under the FSLMRS, and seek to direct federal agencies in a manner that is in conflict with and contrary to obligations Congress has imposed through the FSLMRS and CSRA.

*The Bargaining Process EO (Executive Order No. 13,836)*

39.     The Bargaining Process EO imposes procedural hurdles to the process of federal employee collective bargaining that are contrary to FSLMRS.

40.     The Bargaining Process EO seeks to restrict and limit the mandated process by which federal employers and their employees' collective bargaining representatives negotiate conditions of employment pursuant to the FSLMRS.

41.     The Bargaining Process EO purports to require federal employers to impose unreasonable and arbitrary limitations on negotiations of "ground rules" and on collective

bargaining agreements themselves, and requires federal employers to seek assistance from the Federal Mediation and Conciliation Service ("FMCS") if unreasonable and unilateral time limitations set forth in the order are not met.  This contradicts the FSLMRS.

42.     If a union is unable to meet the severe time restrictions imposed by the Bargaining Process EO, the order demands that federal employers file unfair labor practice complaints against their employees' unions, leaving no room for negotiation in good faith.

43.     The Bargaining Process EO does all this at the same time that the Official Time EO seeks to reduce or eliminate the Official Time available to union representatives to engage in the collective bargaining process in the first place, thereby further undermining good faith negotiation.

44.     Moreover, the Bargaining Process EO eliminates true, meaningful collective bargaining by eliminating all methods of negotiation save one: the exchange of written proposals. It does so despite the FSLMRS's explicit requirement that employers and unions "meet" in order to bargain in good faith.

45.     Importantly, through the Bargaining Process EO, the President and his subordinates seek to implement the Removal EO and the Official Time EO by imposing artificial limits on the process of collective bargaining and thereby unlawfully implement the provisions of those companion executive orders.

46.     The Bargaining Process EO, taken as a whole, constitutes an intent by the President and his subordinates to require federal agencies to bargain in bad faith in violation of the FSLMRS.

47.     Specifically, section 5 of the Bargaining Process EO requires agencies to submit to FMCS mediation any bargaining over ground rules that exceeds a period of six weeks and to

submit to FMCS mediation any negotiations over a collective bargaining agreement that exceeds a period of four to six months—both incredibly short timeframes entirely out of step with custom and practice.

48.     Further, section 5(c) of the Bargaining Process EO requires agencies to consider filing unfair labor practice complaints against any labor representative it believes, in its own discretion and pursuant to unilaterally defined timelines, is delaying or impeding negotiations— rather than determining, in its best judgment, how to negotiate in good faith

49.     Similarly, section 5(c) of the Bargaining Process EO further requires agencies to unilaterally implement changes in employment conditions if the employees' union does not offer counter-proposals within a unilaterally-determined time frame deemed to be reasonable in the sole discretion of the agency—again stripping away the duty to bargain in good faith with the sincere goal of reaching an agreement.

50.     Likewise, section 5(e) of the Bargaining Process EO requires agencies to remove all methods of bargaining other than the exchange of written proposals addressing specific issues—a radical departure from custom and practice, and the epitome of bad faith bargaining insofar as it literally bars face-to-face negotiations, a requirement of the FSLMRS.

51.     Section 6 of the Bargaining Process EO categorically prohibits agencies from bargaining over the subjects included and permitted to be bargained in 5 U.S.C. § 7106(b). Eliminating such flexibility undermines the substance of collective bargaining, and the give-and-take such bargaining entails as a requisite to reaching agreement.

52.     These provisions and requirements of the Bargaining Process EO are contrary to the FSLMRS, which guarantees to federal employees the right to present their views to heads of agencies and to engage in collective bargaining through their union.

53.     Thus, irrespective of the conflicting requirements contained in the FSLMRS, the Bargaining Process EO seeks to restrict and limit the subjects over which federal employers will negotiate; hinders bargaining by requiring federal employers to adhere to artificially-imposed deadlines and face unilateral implementation of employer proposals after fixed periods of time; disregards the obligation to meet at reasonable and convenient times and to determine the appropriate techniques of negotiation; and encourages federal employers to file unfair labor practice charges against employees' unions rather than continuing negotiations even if such negotiations would be fruitful.

54.     Simply, the Bargaining Process EO seeks to establish extra-statutory restrictions on the time and manner of negotiations between agencies and their employees' representatives and seeks to allow agencies to improperly and unilaterally predetermine what processes and techniques are reasonable and/or in good faith.

55.     The Bargaining Process EO is therefore contrary to FSLMRS and the Separation of Powers mandated by the United States Constitution, because it constitutes legislation by the President that amends FSLMRS without legislative approval.

56.     The Bargaining Process EO violates the Take Care Clause of the Constitution because it constitutes a bad faith refusal by the Executive to enforce FSLMRS.

*The Official Time EO (Executive Order No. 13,837)*

57.     The Official Time EO illegally rewrites the FSLMRS by prohibiting employees from receiving official time to prepare, file, and pursue grievances on behalf of their union; on behalf of another individual employee or group of employees; or in excess of certain time limits for individuals and collective bargaining units of employees.

58.     Notably, the Official Time EO does not prohibit an individual employee from receiving official time to prepare, file, and pursue grievances on behalf of her/himself.

59.     The Official Time EO contains no rationale for distinguishing between union grievances, union representatives, and individual employee grievances. The Official Time EO also contains no rationale for imposing a cap on official time applicable to all agencies and employers.

60.     The Official Time EO singles out unions and their members who perform the mandatory duties associated with collective representation and contract administration for disparate, negative treatment as compared to individuals.

61.     The Official Time EO is contrary to the FSLMRS' provisions regarding employees' right to assert and express their right to be represented by a union for the purpose of collective bargaining, and hinders their chosen unions from performing the functions required of them under the FSLMRS.

62.     To wit, Section 4(a)(iii) of the Official Time EO specifically bars the current practice of providing "free or discounted use of government property" such as office space for "employees when acting on behalf of" their union.

63.     As a result of the above conduct and as further described below, in addition to being contrary to the FSLMRS, the Official Time EO restrains and retaliates against Plaintiffs AFSCME and AFT and their union-member employee representatives in violation of the First Amendment and its guarantee of the right to associate.

64.     The Official Time EO seeks to establish several extra-statutory restrictions on the use of official time under the FSLMRS including, inter alia, creating an aggregate annual limit for how much official time all employees in a bargaining unit may use and limiting an individual

12

employee's use of official time to twenty-five percent of the employee's duty time per fiscal year.

65.     As detailed above, under the FSLMRS, union representatives shall be granted official time in any amount that the agency and the union mutually agree to be reasonable, necessary, and in the public interest.  Likewise, any employee who is a member of a bargaining unit represented by a union shall be granted official time in connection with any other matter covered by FSLMRS in any amount that the agency and the union mutually agree to be reasonable, necessary, and in the public interest.  The Official Time EO violates these requirements.

66.     Additionally, Section 2(i) of the Official Time EO seeks to redefine official time granted to an employee under 5 U.S.C. § 7131 as "taxpayer-funded union time," although the FSLMRS contains no such term.

67.     Section 2(j) of the Official Time EO purports to establish a "union time rate" based on the total number of duty hours in the fiscal year that employees in a bargaining unit used for "taxpayer-funded union time," divided by the number of employees in such bargaining unit.  This is another invented term—there is no statutory basis for a "union time rate" as used in the Official Time EO.

68.     Employing these invented terms, Section 3(a) of the Official Time EO seeks to predetermine what constitutes "reasonable, necessary, and in the public interest" by setting forth a presumption that a "union time rate" in excess of 1 hour is not reasonable, necessary, or in the public interest and requires agencies to commit the time and resources necessary to achieve a negotiated rate of 1 hour or less.

69.     Similarly, Section 3(a) of the Official Time EO seeks to vest agencies with unilateral authority to determine whether a particular amount of official time is reasonable, necessary, and in the public interest—rather than negotiating in good faith over the question as is required by statute.

70.     Likewise, Section 3(b) of the Official Time EO requires agency heads to report agreements or proposals to the Director of OPM within 15 days that would authorize amounts of official time under § 7131(d) that would cause the union time rate, which includes official time authorized under §§ 7131(a), (c), and (d), to exceed 1 hour.

71.     Section 4(a)(i) purports to prevent employees from engaging in direct lobbying activities during paid time, except in their official capacities as employees, and thereby conflicts with 5 U.S.C. §§ 7102 and 7131.

72.     Section 4(a)(ii)(1) requires employees to spend seventy-five percent of their paid time in each fiscal year performing "agency business."  In other words, this subsection limits the use of official time to twenty-five percent of an employee's duty time—again contrary to the statutory requirement that official time be negotiated with the union in good faith, not predetermined.

73.     Sections 4(a)(ii)(2) and (3) create an insufficient, and therefore still illegal exception for §§ 7131(a) and (c) official time.  These subsections permit an employee who has received more than twenty-five percent official time to continue to receive official time for bargaining under § 7131(a) and for appearing before the Authority under § 7131(c) provided that any official time in excess of twenty-five percent rolls over to the next fiscal year.  In effect, Section 4(a)(ii) purports to prohibit an employee who spends 50% of a year bargaining an agreement or appearing before the Authority from receiving any official time under § 7131(d) for

14

at least two years.  That is, the Official Time EO mandates a penalty for employees who exercise their statutory right to engage in protected activity, and does not in fact enlarge official time to reasonably meet the need for it set forth by statute.

74.     Section 4(a)(v) of the Official Time EO purports to prohibit any employee from using official time "to prepare or pursue grievances" brought against an agency under any collectively bargained grievance procedure unless: (a) such use is "otherwise authorized by law or regulation;" (b) the employee is preparing or pursuing a grievance brought on the employee's own behalf; or (c) the employee is to appear as a witness in a grievance proceeding.

75.     Further. section 4(a) also broadly removes employees' and their unions' right to negotiate and provide for the arbitration of disagreements over employee use of official time or provide for the resolution of such grievances.

76.     And section 4(a)(v) thus purports to categorically prohibit the use of official time to: (a) prepare or pursue grievances brought on behalf of a labor organization itself or brought to vindicate a labor organization's institutional interests; or (b) to provide a union representative to another employee.

77.     The Official Time EO is therefore contrary to FSLMRS and the Separation of Powers mandated by the United States Constitution, because it constitutes legislation by the President that amends FSLMRS without legislative approval, and seeks to vest agencies with unilateral authority to determine whether a particular amount of official time is reasonable, necessary, and in the public interest.

78.     The Official Time EO also violates the Take Care Clause of the Constitution because it constitutes a bad faith refusal by the Executive to enforce the FSLMRS.

*The Removal EO (Executive Order No. 13,839)*

79.     The Removal EO similarly abrogates the rights conferred on federal employees and their collective bargaining representatives and the duty on the part of federal employers to negotiate in good faith with their employees' unions.

80.     Section 4(a) of the Removal EO excludes two categories of labor disputes from grievance negotiations under the FSLMRS: those concerning (i) the "assignment rating of record" and (ii) "the award of any form of incentive pay, including cash awards; quality step increases; or recruitment, retention, or relocation payments."

81.     In doing so, Section 4(a) of the Removal EO illegally expands the explicit five categories of matters barred from grievance and arbitration by 5 U.S.C. § 7121(c), thereby violating the FSLMRS-mandated grievance procedures, required under 5 U.S.C. § 7121(b), which are to cover the broad categories of complaints related to conditions of employment (as defined by 5 U.S.C. §§ 7103(a)(9) and (14).)

82.     Because Congress determined which finite list of matters should be excluded from grievance procedures, leaving the rest on the table for good faith negotiations; the President cannot take more matters off the table by fiat, yet that is exactly what Section 4(a) of the Removal EO purports to do.

83.     Section 4(c) of the Removal EO, meanwhile, places a 30-day limit on the time period federal employees have to demonstrate "acceptable performance" under the CSRA— unless the agency decides on another limit unilaterally—thus further taking off the table any good faith bargaining over PIP time limits.

84.     Section 4(c) therefore violates 5 U.S.C. § 4302(c)(6) on its face by establishing a time limit that Congress by statute did not create but rather authorized agencies and labor

organizations to bargain over, before the agency takes an adverse personnel action against an employee based on performance.

85.     Sections 4(a) and 4(c) of the Removal EO thereby each remove from good faith bargaining issues that have been found as a matter of law to be mandatory subjects of bargaining between agencies and federal employee labor unions.  *See Douglas v. Veterans Admin.,* 5 MSPR 280 (1981).

86.     The Removal EO is therefore contrary to FSLMRS, CSRA, and the Separation of Powers mandated by the United States Constitution, because it constitutes legislation by the President and seeks to vest agencies with unilateral authority to determine issues which should be subject to good faith bargaining.

87.     The Official Time also EO violates the Take Care Clause of the Constitution because it constitutes a bad faith refusal by the Executive to enforce FSLMRS.

*Impact of the Executive Orders on Plaintiffs AFSCME and AFT and Their Respective Members*

88.     Plaintiffs AFSCME and AFT each, on their own and through their respective affiliated local unions and councils, represent employees of various federal agencies and whose affiliates are the exclusive collective bargaining representatives under the FSLMRS.  As a result, Plaintiffs have the obligations and duties imposed by that statute to represent members and persons employed in their respective collective bargaining units.  These activities include, *inter alia*, negotiation of collective bargaining agreements, enforcement and administration of collective bargaining agreements, processing and arbitration of grievances brought pursuant to negotiated grievance procedures, and representing federal employees in formal discussions or investigative examinations pursuant to 5 U.S.C. § 7114(a)(2).

89.     Plaintiffs AFSCME and AFT, through their affiliates, are presently engaged in collective bargaining with agencies of the federal government.

90.     Plaintiffs AFSCME and AFT are, through their affiliates, presently engaged in representing federal employees in grievances brought pursuant to negotiated grievance procedures.

91.     Members and officers of AFSCME and AFT voluntarily choose to associate with AFSCME in pursuit of the common goals referenced above, and vice versa.  There are no mandatory dues or agency fees in the federal sector.

92.     Members and officers of AFSCME and AFT affiliates use official time and federal office space to meet the duties and obligations imposed on them to fairly represent all persons employed within the collective bargaining units they respectively represent.

93.     Defendant Office of Personnel Management has affirmed publicly, to the press and to unions that the Executive Orders are, in its view, valid and binding on federal agencies.


**CAUSES OF ACTION**

**COUNT 1**
**VIOLATION OF THE TAKE CARE CLAUSE**
**OF THE UNITED STATES CONSTITUTION**

94.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

95.     The Take Care Clause, which requires of the President of the United States a duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, sec. 3, has its roots in the dispute between Parliament and King James II, who was overthrown in the Glorious Revolution of 1688.  Parliament was infuriated at King James's use of his purported power to suspend or dispense with Parliament's laws. Zachary Price, *Enforcement Discretion and Executive Duty*, 67

Vand. L. Rev. 671, 676, 690-91 (2014). The subsequent monarchs, William and Mary, agreed to the English Bill of Rights, which stripped the monarchy of all suspending and dispensing authority. *See* English Bill of Rights of 1689, art. 1. The Framers of the U.S. Constitution unanimously rejected a proposal to grant dispensing powers to the President, and the Supreme Court has held that the Take Care Clause does not grant the President a power to dispense with statutes: "To contend that the obligation imposed on the President to see the laws faithfully executed, implies a power to forbid their execution, is a novel construction of the [C]onstitution, and entirely inadmissible." *Kendall v. United States ex rel. Stokes*, 37 U.S. 524, 613 (1838). Any other conclusion would "vest[] in the President a dispensing power." *Id.*

96.     The Official Time EO, Bargaining Process EO, and Removal EO, individually and operating together, violate the Take Care Clause because they explicitly direct agencies to dispense with good faith bargaining and mandate procedures and positions contrary to the FSLMRS and CSRA.

97.     The Official Time EO, Bargaining Process EO, and Removal EO, each bars agencies from carrying out that statutorily-required good faith bargaining, or from having a sincere resolve to reach agreement, and thus violates the President's constitutional duty to see that the FSLMRS is faithfully executed.

## COUNT II
## VIOLATION OF SEPARATION OF POWERS
## AND *ULTRA VIRES* ACT

98.     Plaintiffs reallege and incorporate by reference the allegations set forth above.

99.     The Court has jurisdiction to grant relief when the President has exceeded his authority.

100.    The United States Constitution does not vest the President with the power to legislate.

101.    Plaintiffs have a non-statutory right of action to enjoin and declare unlawful Executive action that is *ultra vires*.

102.    The Constitution of the United States does not confer authority on the President to issue any of the May 25, 2018 Executive Orders.

103.    Defendant Trump has no authority to issue the Executive Orders under 5 U.S.C. section 7301 or any other act of Congress.

104.    The Executive Orders as challenged here do not pertain to employee conduct, but rather to labor relations and the exercise of rights specifically conferred by Congress.

105.    The President may not lawfully require executive branch managerial and executive employees to take actions inconsistent with the FSLMRS and CSRA.

106.    Congress conferred authority to regulate federal employee labor relations to boards established by the FSLMRS, including the Federal Labor Relations Authority, and specifically divested the President of any such authority.

107.    5 U.S.C. § 7103 does not confer authority to issue the executive orders with respect to any employees represented by Plaintiffs AFSCME or AFT.

108.    Giving effect to the conflicting requirements set forth in the Executive Orders will override Congress' legislative authority and the mandates it prescribed under the FSLMRS.

109.    Giving effect to the Executive Orders will override the obligation Congress imposed on federal agencies to negotiate in good faith over mandatory subjects of bargaining.

110.    Giving effect to the Executive Orders will require federal employers to engage in bad faith bargaining with their employees' labor unions.

111.    The Executive Orders impose subject matter limits to topics that federal employers must bargain or must consider bargaining over.

112.    The Executive Orders impose process limits that are incompatible with federal employers' obligations under the FSLMRS.

113.    The Executive Orders were issued without legal authority, are contrary to the doctrine of Separation of Powers and constitute *ultra vires* acts on the part of Defendant Trump and his subordinates.

## COUNT III
## VIOLATION OF THE FIRST AMENDMENT
## OF THE CONSTITUTION OF THE UNITED STATES

### *[As to Executive Order No. 13,837 (Official Time EO)]*

114.    Plaintiffs reallege and incorporate by reference the allegations set forth above.

115.    Section 4(a)(v) of the Official Time EO purports to categorically prohibit the use of official time to: (a) prepare or pursue grievances brought on behalf of a labor organization itself or brought to vindicate a labor organization's institutional interests; or (b) to provide a union representative to another employee.

116.    There is no valid basis to distinguish grievances brought by the union qua union or grievances in which a union representative seeks to represent another employee from grievances brought on an employee's own behalf or instances in which an employee is to appear as a witness in a grievance proceeding.

117.    By singling out labor organizations for disparate treatment, Section 4(a)(v) of the Official Time EO unlawfully restrains and retaliates against AFSCME, AFT, and their union-member representatives, separately and collectively, in and for the exercise of their rights of association.

118.     Section 4(a)(v) therefore violates the First Amendment to the United States Constitution and should be enjoined.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs AFSCME and AFT pray that this Honorable Court enter an ORDER:

(1)     Declaring Executive Order No. 13,836 (Bargaining Process EO) void and contrary to the Take Care Clause of the United States Constitution;

(2)     Declaring Executive Order No. 13,837 (Official Time EO) void and contrary to the Take Care Clause of the United States Constitution;

(3)     Declaring Executive Order No. 13,839 (Removal EO) is void and contrary to the Take Care Clause of the United States Constitution;

(4)     Declaring that Executive Order No. 13,837 (Official Time EO) is void and contrary to the First Amendment to the United States Constitution;

(5)     Declaring Executive Order No. 13,836 (Bargaining Process EO) void as an unauthorized and/or ultra vires act;

(6)     Declaring Executive Order No. 13,837 (Official Time EO) void as an unauthorized and/or ultra vires act;

(7)     Declaring Executive Order No. 13,839 (Removal EO) void as an unauthorized and/or ultra vires act;

(8)     Enjoining the defendants from implementing Executive Order No. 13,836;

(9)     Enjoining the defendants from implementing Executive Order No. 13,837;

(10)    Enjoining the defendants from implementing Executive Order No. 13,839;

(11)    Granting Plaintiffs attorney's fees and costs; and

(12)     Granting such other relief as this Court finds necessary and proper.


Respectfully Submitted,

_____*/s/ Judith E. Rivlin*_____
**AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES**
Judith E. Rivlin (*application for admission pending*)
Teague P. Paterson *(application for admission pending*)
Matthew S. Blumin (*application for admission pending*
Michael Artz (Bar No. 468025)*

1101 17th Street NW, Suite 900
Washington, DC 20011
(202) 775-5900 (Telephone)
(202) 452-0556 (Facsimile)
jrivlin@afscme.org; tpaterson@afscme.org;
martz@afscme.org; mblumin@afscme.org


_____*/s/ David Strom*_____
**AMERICAN FEDERATION OF TEACHERS**
David Strom (Bar No. 376233)*

555 New Jersey Ave., N.W.
Washington, D.C. 20001
Tel: 202-879-4400
Fax: 202-393-6385
Email: dstrom@aft.org

*lead attorneys to be noticed*

23